# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **HOUSING RIGHTS INITIATIVE,** *et al.*    ) | |
|    ) | |
| **Plaintiffs,**    ) | |
|    ) | |
| **v.**    ) | **Case No. 20-cv-1956** |
|    ) | |
| **BOZZUTO MANAGEMENT COMPANY,** *et al.*    ) | |
|    ) | |
| **Defendants.**    ) | |
|    ) | |

## <u>DEFENDANTS' RESPONSE TO AARP's AMICUS BRIEF</u>

AARP raises no new issues for the Court to consider.  It fails to offer any assistance to the Court in analyzing the allegations in Plaintiff's Second Amended Complaint.

### *AARP's Amicus Brief Does Not Address Plaintiff's Alleged Harm*

On standing, the AARP amicus brief argues generally that stigmatic harm and deprivation of living in an integrated community can be sufficiently concrete and particularized injuries to confer standing. *See* Dkt. 82, pp. 17-23 of 25.  Defendants, however, do not argue that, as a matter of law, these types of harm are insufficient to confer standing.  The question before the Court is whether *Ms. Opiotennione,* rather than a theoretical plaintiff, has plausibly alleged that she was personally deprived of living in an age-integrated community, suffered stigmatic harm, or experienced any other injury.  As has been briefed to this Court, she has not.  *See* Dkt. 65 and 75.

AARP's explanation of how the law may apply to a theoretical plaintiff is wholly irrelevant to assessing the allegations pled in Ms. Opiotennione's complaint.  For example:

AARP's brief discusses a theoretical plaintiff who was denied the housing opportunity of his/her choice.  Ms. Opiotennione, on the other hand, never expressed an interest in renting an apartment in any of Defendants' properties.  Instead Ms. Opiotennione lived in a single-family

house in Washington, D.C. prior to her putative housing search and then purchased another single-family home in Washington, D.C., where she worked.

AARP's brief addresses ads with discriminatory content that expressed hostility toward older individuals.  Defendants' Facebook ads, on the other hand, were facially neutral and did not indicate a discriminatory age preference or hostility to older renters, and Plaintiff alleges nothing about the totality of Defendants' marketing campaigns.  *See* Dkt. 65 at 15-16; Dkt. 75 at 18-19.[1]

AARP's brief imagines a situation where older individuals are discouraged from applying and/or whose rental applications are rejected, but, again, that is not this case.  Ms. Opiotennione was not rejected or denied housing by any of the Defendants, and she has not alleged that Defendants refuse to rent apartments to older individuals or that the tenant population in Defendants' properties lack age-diverse residents.  *See* Dkt. 65 at 10.

Ms. Opiotennione, the sole plaintiff here, does not have standing to make these claims.  She has not suffered any sort of actual injury – stigmatic or otherwise.  AARP's amicus brief does nothing to address the substantial deficiencies in Plaintiff's Amended Complaint.  Instead, by recognizing scenarios where standing may be sufficient, AARP underscores that the harm alleged here is not concrete and particularized as is constitutionally required.  *See Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

---

[1] The AARP brief fails to explain how Ms. Opiotennione's *not* receiving ads on her Facebook feed could possibly stigmatize her.  If Defendants published ads that indicated a discriminatory preference or hostility to older renters or told Plaintiff or other prospective renters that they were not able to rent at the properties because of their protected characteristic, that would change the calculus.  But of course, neither of these things were alleged, nor could they be.

### *AARP's Amicus Brief Fails To Establish That Plaintiff Has Stated A Viable Claim Under Montgomery County or D.C. Fair Housing Laws*

AARP cites no authority to support its suggestion that it would be appropriate for this Court to export the FHA advertising provisions and case law interpreting it and apply it wholesale to the claims plead here.  The Montgomery County Code's advertising provision is different from the Fair Housing Act;[2] the ads at issue are completely age neutral in themselves; and there are no allegations that the ads were, for any Defendant, part of a systemic pattern of inappropriate targeting based on a protected characteristic.

Even if this Court were inclined to take the expansive approach advocated by AARP, under the FHA's provisions, the allegations do not support a claim under the FHA.  Unlike the two cases relied on by AARP (and Plaintiff), Plaintiff has and can only allege that isolated advertisements targeted individuals based on age.   As already explained in Defendants' Reply Brief:

> Even the two cases cited by Plaintiff included allegations about the entirety of the defendants' advertising, not single, stand-alone advertisements.  *See Guevara v. UMH Properties, Inc.*, No. 2:11-CV-2339-SHL-TMP, 2014 WL 5488918, at *6 (W.D. Tenn. Oct. 29, 2014) (advertising campaign that only advertised in Spanish language media resulting in "virtually all" tenants being Hispanic despite the county being predominately African American was sufficient to state an FHA claim); *Martinez v. Optimus Properties, LLC*, No. 216CV08598SVWMRW, 2017 WL 1040743, at *5 (C.D. Cal. Mar. 14, 2017) (plaintiffs allegation that defendants only advertised on specific websites, all of which "target young, English-speaking, single, non-disabled people" was sufficient to state an FHA claim).  Notably, both of these cases were decided under the more stringent FHA language, and, even then, the allegations concerned the entirety of the defendant's advertising, rather than the isolated advertisements at issue here.

Dkt. 75 at 16-17.  AARP says nothing to change the fact that Plaintiff's Complaint does not (and cannot) allege that the entirety of Defendants' advertising campaigns (of which Facebook is but a

---

[2] The DCHRA language prohibiting discriminatory advertising is similar to the FHA's, rather than the MCC.  However, for the reasons set forth in Section II of Defendants' Reply (Dkt. 75), this should not change the outcome.  The Amended Complaint fails to state a claim for discriminatory advertising under either statute.

small part) are targeted to exclude older individuals.

AARP also does not dispute that Ms. Opiotennione and other older individuals could and did learn of rental opportunities at Defendants' properties from the many other Internet platforms that Defendants use to advertise their properties.  Indeed, AARP's brief concedes that the way renters look for apartments is to search actively on the Internet.[3]  In contrast to this, the Amended Complaint describes no such activities by the Plaintiff.  Rather it portrays Ms. Opiotennione's behavior as entirely passive – simply waiting for advertisers to push apartment ads to her Facebook feed.  The Facebook ads were just one element of Defendants' broader Internet advertising campaigns, and Ms. Opiotennione could easily have found out about rental opportunities at Defendants' properties from the variety of other Internet sources.  *See* Dkt. 65 at 16-19.

For these reasons and as set forth more fully in Defendants' Motion to Dismiss (Dkt. 65) and Reply (Dkt. 75), Defendants' Motion should be granted, and this case should be dismissed with prejudice.

Respectfully submitted,


 /s/ Lynn E. Calkins                          /s/ Matthew M. Moore
Lynn E. Calkins, Bar No. 12121        Matthew M. Moore, Bar No. 14030 *
Holland & Knight LLP                      Thomas John Gartner, Bar No. 18808
800 17th Street, N.W., Suite 1100      Shulman Rogers

---

[3] AARP's brief states that 72% of apartment seekers use the Internet to facilitate their housing searches.  *See* Dkt. 82 at 6.  In doing so, AARP actually supports and reinforces a basic premise of Defendants' Motion – that there are a plethora of Internet platforms other than Facebook that prospective renters use to search for an apartment that Defendants and other property managers use to advertise and attract prospective renters to their properties.  *See* Dkt. 65 at 18.  Indeed, Facebook ads represent a relatively small segment of Internet advertising for rental properties.  The source of the statistic cited in AARP's Brief confirms that more than 60% of renters use either an apartment listing site (such as Apartments.com) or a search engine (such as Google) as their preferred online source when searching for an apartment. *See* Apartments.com and Google, Online Search Behavior and Trends of Apartment Renters (available at http://costarmultifamily.com/google-whitepaper/Apartment_GoogleWhitePaper.pdf).

Washington, D.C. 20006
Telephone: (202) 955-3000
lynn.calkins@hklaw.com


*Counsel for Bozzuto Management Company*


  /s/ Sharon Oras Morgan
Sharon Oras Morgan, Bar No. 29663 *
W. Christian Moffitt, *pro hac vice*
Fox Rothschild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
Telephone: (610) 397-7073
cmoffit@foxrothschild.com




*Counsel for Kettler Management, Inc.*



  /s/ Grace E. Speights
Grace E. Speights, Bar No. 05254 *
Morgan Lewis & Bockius LLP
111 Pennsylvania Ave. NW
Washington, DC  20004
Telephone: (202) 739-5189
grace.speights@morganlewis.com


*Counsel for JBG SMITH Management
Services, L.L.C.*




  /s/ Michael Jaffe
Michael Evan Jaffe, Bar No.06694 *
David C. Grossman, Bar No. 21260
Pillsbury Winthrop Shaw Pittman LLP
1200 17th Street, NW
Washington, DC  20036
Telephone: (202) 663-8068
michael.jaffe@pillsburylaw.com

12505 Park Potomac Ave., 6th Floor
Potomac, MD  20854
Telephone: (301) 230-6560
mmoore@shulmanrogers.com


*Counsel for Greystar Management
Services L.P.*


  /s/ Emmett F. McGee, Jr.
Adriana R. Midence, *pro hac vice*
Emmett F. McGee, Jr., Bar No. 08462 *
Eric R. Mangus, *pro hac vice*
Kelli Church, *pro hac vice*
Jackson Lewis P.C.
171 17th Street, NW, Suite 1200
Atlanta, GA  30363
Telephone: (404) 586-1822
emmett.mcGee@jacksonlewis.com


*Counsel for Wood Residential Services,
LLC*



  /s/ Leslie Paul Machado
Leslie Paul Machado, Bar No. 14952 *
O'Hagan Meyer
2560 Huntington Avenue
Suite 204
Alexandria, VA 22303
Telephone: (703) 775-8607
lmachado@ohaganmeyer.com


*Counsel for Pinnacle Campus Living LLC*




/s/ H. Matson Coxe, IV
H. Matson Coxe, IV, Bar No. 18576*
Elisabeth L. Shu, *pro hac vice*
Wilson Elser Moskowitz Edelman &
Dicker, LLP
8444 Westpark Drive, Suite 510
McLean, VA 22102
Telephone: (703) 852-7793

5

david.grossman@pillsburylaw.com

lisa.shu@wilsonelser.com
H.Matson.CoxeIV@wilsonelser.com

*Counsel for Tower Construction Group LLP*

*Counsel for Vantage Management Inc.*

 /s/ Kathleen Pontone
Kathleen Pontone, Bar No. 01225 *
Elisabeth Koloup Hall, Bar No. 18734
Miles and Stockbridge PC
100 Light Street, 10th Floor
Baltimore, MD  21202
Telephone: (410) 385-3757
kpontone@milesstockbridge.com

*Counsel for Berkshire Communities, LLC*

* *Signed by Lynn E. Calkins with permission*
 *of the signing attorney*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 11th day of May, 2021, a true copy of the foregoing was

served by ECF on:

Matthew K. Handley
Rachel Nadas
HANDLEY FARAH & ANDERSON PLLC
777 6th Street, NW
Eleventh Floor
Washington, D.C. 20001

Peter Romer-Friedman
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312,
Washington, D.C. 20036

   /s/ Lynn E. Calkins

Lynn E. Calkins