# EXHIBIT 1

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| TIANA MARTIN, | |
| Plaintiff, | Case No.: 2020 CA 000319 B |
| v. | Judge Jason Park |
| APARTMENT INVESTMENT AND MANAGEMENT COMPANY *et al.*, | Mediation: June 16, 2021 |
| Defendants. | |

### ORDER

This matter is before the Court on the parties' cross-motions for partial summary judgment, both of which were filed March 10, 2021. Upon consideration of the motions, the respective opposition and reply memoranda, and the entire record, and for the reasons stated below, the Court grants the plaintiff's motion, denies the defendants' motion, and enters summary judgment for the plaintiff on Counts I and III of the complaint.

### BACKGROUND

This action arises from plaintiff Tiana Martin's attempt to rent property at the Latrobe Apartment Homes ("Latrobe"), a community of 175 rental apartments located at 1325 15th Street N.W. in the District of Columbia. *See* Defs.' Statement of Facts ¶ 1. As alleged in the complaint, Latrobe is owned, managed, and operated by defendant Apartment and Investment Management Company ("AIMCO") and its subsidiary, defendant Rhode Island 15, LP, d/b/a Latrobe Apartment Homes. *See* Compl. ¶¶ 10-11.

The following facts are undisputed. Plaintiff Tiana Martin participates in the Housing Choice Voucher Program ("HCVP"), a rental assistance program funded and administered by the United States Department of Housing and Urban Development ("HUD"). *See Housing Choice Vouchers Fact Sheet*, U.S. Dept. of Hous. and Urban Dev., https://www.hud.gov/program_offices/public_indian_housing/programs/hcv/about/fact_sheet (last visited May 18, 2021). The HCVP is designed to assist low-income families, the elderly, and the disabled afford decent, safe, and sanitary housing in the private market. *See id.* Housing choice vouchers are administered locally by public housing agencies (PHAs); in the District of Columbia, the HCVP is administered by the District of Columbia Housing Authority (DCHA). *See id.*; *Housing DC | Resident Resources*, Gov't of D.C., https://housing.dc.gov/page/housing-dc-resident-resources#:~:text=Housing%20Choice%20Voucher%20Program%20(HCVP,are%20an%20%20eligible%20applicant%20here (last visited May 18, 2021).

Defendant AIMCO is in the business of leasing apartments to tenants in the District of Columbia, including Latrobe. *See* Pl.'s Mot. for Summ. J., Ex C (Lauren Cohenour Dep. Tr.) ("Cohenour Dep.") 30:15-31:2, 39:6-11; *id.*, Ex. D (Jacqueline Shapiro Dep. Tr.) ("Shapiro Dep.") 41:19-43:7; *id.*, Ex. J (Jamie Lee Nicolson Dep. Tr.) ("Nicolson Dep.") 21:18-22:3, 23:4-10; Ex. M (Shara Hunter Dep. Tr.) ("Hunter Dep.") 17:9-18:12.[1] Latrobe communicates with prospective tenants through its leasing agents, its website, and its automated response system, "Lisa." *See, e.g.*, Cohenour Dep. 27:11-31:2. Since January 1, 2017, AIMCO has maintained records of prospective tenant inquiries, or "leads," through a program called OneSite. *See* Shapiro Dep. 51:17-52:17. The

---

[1] According to deposition transcripts appended to the parties' cross-motions for summary judgment and to the plaintiff's motion for class certification, Lauren Cohenour is a shared services center project manager at AIMCO, Jacqueline Shapiro is AIMCO's corporate designee and served as the vice president at AIMCO in 2019 and 2020, Jamie Lee Nicolson is a marketing manager at AIMCO, and Shara Hunter was a leasing consultant and is now a community manager at AIMCO.

OneSite program generates an entry or "guest card" for each lead, including the prospective tenant's name and contact information, and AIMCO employees are responsible for following up with and closing out each lead. *See id.* 52:7-13, 53:11-22, 58:2-59:5, 60:5-61:5.

On February 27, 2019, AIMCO entered into an agreement with Dynasty Marketplace, Inc. ("Dynasty"), pursuant to which Dynasty agreed to provide AIMCO with the "Lisa" automated system to respond to inquiries from prospective tenants via email or text message. *See* Pl.'s Mot. for Summ. J., Ex O (Dynasty Services Agreement); Cohenour Dep. 27:11-21. Beginning in February 2019, AIMCO relied upon "Lisa" to create leads, and leads generated through "Lisa" were recorded in OneSite. *See* Shapiro Dep. 52:18-53:10. "Lisa" was onboarded using information from AIMCO employees, and in April 2019, Sara Sallic provided information to Dynasty to enable "Lisa" to answer prospective tenant inquiries concerning housing vouchers.[2] *See id.* 68:1-9. At this time, Sallic provided information to Dynasty stating that Latrobe did not accept housing vouchers, and between April 23, 2019 and January 2020, "Lisa" subsequently transmitted this information to fifteen prospective tenants. *See* Pl.'s Mot. for Summ. J., Ex. F (Defendant AIMCO's Answers and Objections to Plaintiff's Third Set of Interrogatories) ("AIMCO Third Interrog.") ¶ 15; Shapiro Dep. 68:10-13.

AIMCO is responsible for maintaining and updating Latrobe's website. *See* Nicholson Dep. 21:11-16. Beginning at some point in 2017 and ending in January 2020, Latrobe's website stated either "We do not accept housing vouchers at this community" or "We do not accept housing choice vouchers at this community." *See* Pl.'s Mot. for Summ. J., Ex H ("2015 Latrobe Website Screenshots"); *id.*, Ex I ("2019 Latrobe Website Screenshots"); AIMCO Third Interrog. ¶ 15. In

---

[2] In April 2019, when she provided information to Dynasty on AIMCO's behalf, Sara Sallic was an employee at AIMCO. *See* Shapiro Dep. 68:1-13.

3

August 2019, the "Frequently Asked Questions" page of the website contained the following question and answer: "Do you accept housing choice vouchers (section 8)? We do not accept housing vouchers at this community." 2019 Latrobe Website Screenshots. The "Frequently Asked Questions" page also contained the following: "Q: Do you comply with Fair Housing Standards? A: We do business in accordance with the Federal Fair Housing Law. All applications and renewals are considered equally without discrimination on the basis of any class protected by applicable laws." Compl., Ex. B (2019 Latrobe Website Screenshots). According to Latrobe and its employees, since late 2018, upon advice from counsel, Latrobe has allegedly had a consistent policy of accepting housing vouchers. *See* Defs.' Mot. for Summ. J., Ex. 7 (Defendant Latrobe's Amended Answers and Objections to Plaintiff's First Set of Interrogatories) ("Latrobe First Interrog.") ¶ 5; *see also* Nicholson Dep. 12-14 ("In my understanding, we did accept vouchers at Latrobe, so the information that was on the website was incorrect.").

On August 15, 2019, the plaintiff, Tiana Martin, called a number on an advertisement for Latrobe to inquire about renting an apartment, but was unable to reach a live person. *See* Defs.' Mot. for Summ. J., Ex. 6 (Tiana Martin Dep. Tr.) ("Martin Dep.") 63:13-64:22. Following her call, the plaintiff received a text message from "Lisa." *See* Pl.'s Mot. for Summ. J., Ex. E. The plaintiff informed "Lisa" that she had a housing voucher, and "Lisa" replied, "Unfortunately we do not accept section 8." *Id.* The plaintiff responded, "That is untrue. I will be filing discrimination paperwork with HUD." *Id.* On or about August 15, 2019, the plaintiff allegedly viewed Latrobe's website, including the statement "We do not accept housing vouchers at this community." *See* Martin Dep. 16:5-13. The plaintiff allegedly never paid an application fee or submitted an application for housing at Latrobe, and instead began "call[ing] around for other apartments." *Id.* 129:17-130:1, 171:7. In January 2020, immediately after the plaintiff filed this action, AIMCO

4

allegedly corrected the "Lisa" program to state that Latrobe did accept housing vouchers, and also removed the information regarding housing vouchers from Latrobe's website. *See* Shapiro Dep. 142:17-143:5 ("[W]hen we found out in January 2020 that we had made a mistake, and we quickly fixed that by adjusting short verbiage that said, "Yes. We accept."); Nicholson Dep. 28:21-29:14.

On January 14, 2020, the plaintiff filed this action against the defendants, asserting claims for source of income discrimination in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 *et seq.*, based on Latrobe's alleged discriminatory statements (Count I) and Latrobe's alleged discriminatory refusal to rent (Count II). The plaintiff also asserted a claim for violations of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901 *et seq.* (Count III).[3] *See* Compl. ¶¶ 45-63. The plaintiff asks the Court to enter a judgment declaring the defendants in violation of the DCHRA and CPPA and to enter a judgment for injunctive relief ordering the defendants to abandon their practice of refusing to rent to housing voucher holders. *See id.* at 15-16. The plaintiff also requests monetary damages, punitive damages, treble damages, and reasonable attorneys' fees and costs. *See id.* at 16. On March 10, 2021, the plaintiff and the defendants filed cross-motions for partial summary judgment. *See generally* Pl.'s Mot. for Summ J., Defs.' Mot. for Summ. J.

On March 24, 2021, the plaintiff and the defendants filed oppositions to one another's partial motions for summary judgment. *See generally* Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"); Defs.' Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Opp'n"). On March 31, 2021,

---

[3]   On March 8, 2019, Christopher Benjamin brought an action for violations of the DCHRA against defendant AIMCO and OP Property Management, LLC. *See Benjamin v. OP Property Mgmt., LLC et al.*, 2019 CA 001359. In the complaint, Mr. Benjamin, a fair housing tester, alleged that he had inquired about renting an apartment at Latrobe, but that he was repeatedly informed that Latrobe did not accept housing vouchers. *See id.*, Compl. ¶¶ 12-33. On June 3, 2019, Mr. Benjamin voluntarily dismissed the action without prejudice. *See id.*, Notice of Voluntary Dismissal.

the plaintiff and the defendants filed replies in support of their motions. *See generally* Pl.'s Reply; Defs.' Reply.

## LEGAL STANDARD

A party moving for summary judgment must demonstrate that there are no material facts in dispute and that the party is entitled to judgment as a matter of law. Once the moving party meets its burden, the non-moving party must present specific facts demonstrating that there is a material factual dispute. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A genuine issue of material fact exists if the record contains "some significant probative evidence . . . so that a reasonable fact-finder would return a verdict for the non-moving party." *Brown v. 1301 K St. Ltd. P'ship*, 31 A.3d 902, 908 (D.C. 2011) (quoting *1836 S Street Tenants Ass'n v. Estate of Battle*, 965 A.2d 832, 836 (D.C. 2009)). A motion for summary judgment must be granted if, taking all inferences in the light most favorable to the nonmoving party, a reasonable juror could not properly find for the nonmoving party under the appropriate burden of proof. *See, e.g., Woodfield v. Providence Hosp.*, 779 A.2d 933, 936-37 (D.C. 2001).

## ANALYSIS

In her motion, the plaintiff seeks summary judgment as to liability on Count I of the complaint for discriminatory statements in violation of the DCHRA, and on Count III of the complaint for violations of the CPPA. *See* Pl.'s Mot. for Summ. J. at 1. The plaintiff argues that there is no genuine dispute of material fact that the defendants made statements with respect to the rental of a dwelling which indicated discrimination based on source of income in violation of the DCHRA. *See id.* at 7-12. The plaintiff also argues that the undisputed facts demonstrate that the defendants violated the CPPA by violating the DCHRA in a consumer context. *See id.* at 12-15. In their opposition to the plaintiff's motion, the defendants argue that the plaintiff is not entitled to

summary judgment on her DCHRA discriminatory statements claim because the plaintiff has failed to demonstrate a nexus between the alleged discriminatory statements and a wrongful decision by the defendants. *See* Defs.' Opp'n at 9-10. The defendants also assert that the plaintiff is not entitled to summary judgment on her CPPA claim because the plaintiff has failed to show that Latrobe's website misrepresented its compliance with federal housing laws, and because the plaintiff failed to allege a claim for *per se* violation of the CPPA in the complaint. *See id.* at 5-9.

In their motion for partial summary judgment, the defendants seek summary judgment on Count II of the complaint for discriminatory refusal to rent in violation of the DCHRA, and on Count III of the complaint.[4] *See* Defs.' Mot. for Summ. J. at 1. The defendants argue that they are entitled to summary judgment on Count II because the plaintiff cannot establish that the defendants ever refused housing to the plaintiff. *See id.* at 11-12. The defendants also argue that the Court must grant summary judgment in their favor on the plaintiff's CPPA claim because the plaintiff has failed to demonstrate that Latrobe's website misrepresented the defendants' compliance with applicable law, and because the CPPA does not apply to landlord-tenant relations. *See id.* at 5-7. In her opposition, the plaintiff asserts that the defendant is not entitled to summary judgment on the DCHRA discriminatory refusal to rent claim because the plaintiff's failure to submit a rental application to Latrobe does not preclude her recovery under the DCHRA. *See* Pl.'s Opp'n at 12-13. The plaintiff also argues that the CPPA applies to landlord-tenant relations and that the

---

[4] The defendants also seek summary judgment with respect to "putative class claims that are barred by the applicable statutes of limitations," asserting that any potential class claims arising before January 15, 2018 are barred by the statute of limitations. *See* Defs.' Mot. for Summ. J. at 1, 8-11. Because the Court denied the plaintiff's motion for class certification, and, therefore, no such putative class claims remain, the Court denies the defendants' request for summary judgment on class claims. *See* Order (May 26, 2021).

statement on the defendants' website is a material misrepresentation under the CPPA. *See* Pl.'s Opp'n at 4-9.

I. **THE COURT GRANTS SUMMARY JUDGMENT FOR THE PLAINTIFF ON THE PLAINTIFF'S CLAIM FOR SOURCE OF INCOME DISCRIMINTION IN VIOLATION OF THE DCHRA (DISCRIMINATORY STATEMENTS) (COUNT I)**

Under District of Columbia law, it is an "unlawful discriminatory practice" to "make, print, or publish . . . any notice, statement, or advertisement, with respect to a transaction . . . in real property, or financing relating thereto, which notice, statement, or advertisement unlawfully indicates . . . any preference, limitation, or discrimination based on . . . source of income." D.C. Code § 2-1402.21(a)(5). The statute stipulates that housing vouchers, "[t]he monetary assistance provided to an owner of a housing accommodation under section 8 of the United States Housing Act of 1937 . . . either directly or through a tenant, shall be considered a source of income under this section," *id.* § 2-1402.21(e), and further provides that "source of income" includes money secured "from federal payments," *id.* § 2-1401.02. "Any person claiming to be aggrieved by an unlawful discriminatory practice" has standing to sue under the DCHRA "for damages and such other remedies as may be appropriate."[5] *Id.* § 2-1403.16.

"In enacting the DCHRA, the Council of the District of Columbia examined federal civil rights acts and court decisions interpreting those statutes." *Nicola v. Washington Times Corp.*, 947 A.2d 1164, 1171 (D.C. 2008). As the federal Fair Housing Act ("FHA") contains a prohibition on statements with regard to unlawful discrimination in real estate transactions which is nearly identical to the DCHRA's prohibition on discriminatory statements based on source of income, D.C. Code § 2-1402.21(a)(5), the Court is guided by the framework of the FHA when analyzing

---

[5] Neither party disputes that the plaintiff, who sought housing elsewhere after being informed that Latrobe did not accept housing vouchers, has standing to sue under the DCHRA as an "aggrieved party." *See* D.C. Code § 2-1403.16; Martin Dep. 63:13-64:22, 129:17-130:1, 171:7.

8

claims for violations of § 2-1402.21(a)(5).[6] *See Equal Rights Ctr. v. SCF Mgmt., LLC*, 2016 D.C. Super. LEXIS 19, at *6 (D.C. Super. Ct. Aug. 3, 2016) (applying FHA principles to a claim for violation of D.C. Code § 2-1402.21(a)(5) based on a property management company's alleged refusal to accept housing vouchers); *see also Nicola*, 947 A.2d at 1171 (quoting *Benefits Commc'n Corp. v. Klieforth*, 642 A.2d 1299, 1301 (D.C. 1994)) ("When cases require interpretation of the DCHRA, this court has generally looked to cases from the federal courts involving claims brought under the Civil Rights Act of 1964 for guidance and have adopted those precedents when appropriate.") (internal quotation marks omitted).

Accordingly, to establish a claim for discriminatory statements under § 2-1402.21(a)(5) of the DCHRA, a plaintiff must prove three elements: (1) the defendant made a statement, (2) the statement was made with respect to the sale or rental of a dwelling, and (3) the statement indicates a preference, or limitation, or discrimination based on a protected class. *See Campbell v. Robb*, 162 Fed. Appx. 460, 466-67 (6th Cir. 2006) (listing requirements for a claim under 42 U.S.C. § 3604(c)). The allegedly discriminatory statement may be either written or oral. *See id.*

The Court finds that there is no genuine dispute of material fact that the defendants made discriminatory statements expressing a preference for source of income in violation of the DCHRA. *See id.* First, it is undisputed that defendants made written and oral statements, both on the website and through "Lisa," that Latrobe did not accept housing vouchers. *See* 2019 Latrobe

---

[6]  Under the FHA, it is unlawful to

> make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).

9

Website Screenshots; AIMCO Third Interrog. ¶ 15; Shapiro Dep. 68:10-13. Second, these statements plainly were made with respect to the rental of apartment homes at Latrobe. *See id.*

Finally, the defendants' statements that Latrobe did not accept housing vouchers clearly indicated a preference for tenants without housing vouchers and discrimination against a protected class of voucher holders. *See* D.C. Code § 2-1401.02 (providing that "source of income" under the DCHRA includes money secured "from federal payments"). In determining whether a statement "indicates a preference, limitation, or discrimination" based on a protected class, courts ask whether the statement "suggests to an ordinary reader that a particular [class] is preferred or dispreferred for the housing in question." *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d. Cir. 1991). Here, the Court finds that there is no genuine dispute that an ordinary reader viewing Latrobe's statements about housing vouchers would assume that Latrobe would not rent to voucher holders, and in light of the fact that the plaintiff was dissuaded from pursuing housing at Latrobe after hearing the statements, there is no genuine dispute of material fact that the defendants' statements indicated a discriminatory preference. *See id.* ("[W]e read the word 'preference' to describe any ad that would discourage an ordinary reader of a particular [protected group] from answering it.").

The defendants argue that the plaintiff has failed to demonstrate that there was "a nexus between the discriminatory statement and a wrongful decision" because the plaintiff never applied for housing at Latrobe and, as a result, the statement that Latrobe did not accept housing vouchers was not "related to the decision of whether or not to sell or rent the property." Defs.' Opp'n at 10. The cases the defendants cite in support of this argument establish that a statement of discriminatory preference is made only if it is related to the decisional process, and that conversely, a "stray remark" unrelated to the decisional process is not actionable. *See Campbell*, 162 Fed.

10

Appx. at 467 (finding that defendant's statement that he would rent the property to plaintiff provided that there would not be "black people hanging around my parking lot" was made "with respect to" the rental, but referring to a black cat on the premises with a racial epithet was a "stray remark"); *Merrick v. Farmers Ins. Grp.*, 829 F.2d 1434, 1438-39 (9th Cir. 1990) (remark by hiring manager was "stray remark" unrelated to decisional process); *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1329 (7th Cir. 1989) (finding that plaintiff failed to prove nexus between the defendant's statements and the demotion of the plaintiff where the demotion was based on the plaintiff's poor performance and his supervisor's statements were not a "substantial factor" in the decision). These cases do not, however, stand for the proposition that an alleged discriminatory statement is unrelated to the decisional process if a plaintiff does not formally apply for housing. Moreover, the Court finds that the defendants' statements that Latrobe did not accept housing vouchers were not "stray remarks" unrelated to the decisional process, but were instead statements of policy governing the defendants' decision whether or not to rent apartments to particular individuals. *See Campbell*, 162 Fed. Appx. at 467.

The Court, therefore, rejects the defendants' argument that the plaintiff is precluded from recovery under § 2-1402.21(a)(5) because she did not submit an application for housing at Latrobe after being told that Latrobe would not accept her housing voucher, and instead grants summary judgment for the plaintiff on her claim for discriminatory statements under the DCHRA.

## II. THE COURT DECLINES TO GRANT SUMMARY JUDGMENT FOR THE DEFENDANT ON THE PLAINTIFF'S CLAIM FOR SOURCE OF INCOME DISCRIMINATION IN VIOLATION OF THE DCHRA (DISCRIMINATORY REFUSAL TO RENT) (COUNT II)

Under District of Columbia law, it is an "unlawful discriminatory practice" to "refuse or fail to initiate or conduct any transaction in real property" based on an individual's source of income. D.C. Code § 2-1402.21(a)(1). As discussed above, "source of income" under the DCHRA

11

expressly includes the use of a housing voucher or subsidy, *see* D.C. Code §§ 2-1401.02, 2-1402.21(e), and any individual "claiming to be aggrieved by an unlawful discriminatory practice" has standing to sue under the DCHRA, D.C. Code § 2-1403.16. D.C. Code § 2-1402.21(a)(1) is substantively identical to 42 U.S.C. § 3604(a), and the Court is therefore guided by caselaw construing the federal statute when analyzing the plaintiff's claim for discriminatory refusal to rent.[7] *See Nicola*, 947 A.2d at 1171. Under the federal statute, to establish a prima facie case of housing discrimination, a plaintiff must allege (1) that she is a member of a protected class; (2) that she sought and was qualified to rent housing; (3) that she was rejected; and (4) that the housing remained available to other renters. *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003).

In their motion for summary judgment, the defendants argue that the plaintiff is unable to establish a prima facie case for discriminatory refusal to rent under D.C. Code § 2-1402.21(a)(1) because the plaintiff never formally applied for housing and was never explicitly refused housing by the defendants. *See* Defs.' Mot. for Summ. J. at 11-12. The defendants assert that federal precedent in housing discrimination cases, both in District of Columbia courts and in neighboring jurisdictions, establishes a bright-line rule that a plaintiff asserting a claim for discriminatory refusal to rent must have actually applied for housing and been rejected by the defendant. *See id.*; Defs.' Reply at 8-10.

---

[7]   The FHA provides that it shall be unlawful to

> refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a).

Upon review of the relevant caselaw, the Court cannot conclude that such a requirement is vital to a federal housing discrimination claim, much less that this rule, which has never been explicitly applied by a District of Columbia court, applies to claims under the DCHRA. Though some federal courts have considered whether a plaintiff applied for housing when analyzing housing determination claims, *see, e.g.*, *Wilson v. Wilder Balter Partners, Inc.*, 2015 U.S. Dist. LEXIS 19178, at *24-31 (S.D.N.Y. Feb. 17, 2015) (dismissing plaintiff's federal housing discrimination claim where plaintiffs "[did] not claim that they followed the necessary procedures to apply for" housing and therefore were not "qualified" to rent), others have found potentially viable discrimination claims where plaintiffs did not formally apply, *see, e.g.*, *Asbury v. Brougham*, 866 F.2d 1276, 1280 (10th Cir. 1989) (finding that plaintiff met her burden of proving a prima facie case of housing discrimination where plaintiff inquired about housing without formally applying but was told that there were no vacancies, despite defendant's argument that plaintiff was never explicitly rejected). Indeed, members of this Court have found violations of D.C. Code § 2-1402.21(a)(1) without explicitly requiring claimants to prove that they applied for housing. *See District of Columbia v. Evolve, LLC*, 2020 D.C. Super. LEXIS 6, at *13 (D.C. Super. Ct. Feb. 25, 2020) (finding that defendant violated D.C. Code § 2-1402.21(a)(1) where defendant "not only did not allow prospective tenants receiving a subsidy from the HCVP to schedule showings, but Defendant also advertised and explicitly informed prospective tenants that Defendant did not accept 'Section 8' vouchers"); *Equal Rights Ctr. v. Belmont Crossing Apts., LLC*, 2018 D.C. Super. LEXIS 8, at *3-4 (D.C. Super. Ct. Oct. 22, 2018) (finding violation of D.C. Code § 2-1402.21(a)(1) where defendant instructed its employees not to accept housing vouchers, a leasing agent refused to accept a veteran subsidy from a pre-approved prospective tenant, and defendant's representative told plaintiff that they do not "accept short-term subsidies at all").

13

The Court is persuaded by the reasoning of the latter cases and declines to grant summary judgment for the defendants on the plaintiff's discriminatory refusal to rent claim on the basis that the plaintiff did not submit a formal application to Latrobe and the defendants did not explicitly refuse housing. Indeed, the relevant text of the DCHRA makes it an "unlawful discriminatory practice" to refuse to rent, but also to "fail to initiate or conduct any transaction in real property" based on a prospective tenant's source of income. D.C. Code § 2-1402.21(a)(1). Genuine questions of fact remain, therefore, as to whether the plaintiff was refused housing under the meaning of the DCHRA. Although the plaintiff did not formally apply for housing with Latrobe, she sought housing elsewhere after being informed multiple times that Latrobe did not accept housing vouchers. Martin Tr. ¶¶ 63:13-64:22, 129:17-130:1, 171:7. In the Court's view, there is little difference between the defendants' discriminatory statement dissuading the plaintiff from continuing her application and an explicit refusal to rent to her. The Court, therefore, denies the defendants' motion for summary judgment as to the plaintiff's claim for discriminatory refusal to rent under the DCHRA.

### III. THE COURT GRANTS SUMMARY JUDGMENT FOR THE PLAINTIFF ON THE PLAINTIFF'S CLAIM FOR VIOLATIONS OF THE CPPA (COUNT III)

Under the CPPA, it is a violation "for any person to engage in an unfair or deceptive trade practice." D.C. Code. § 28-3904; *see Atwater v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 566 A.2d 462, 465 (D.C. 1989) ("The [CPPA] is a comprehensive statute designed to provide procedures and remedies for a broad spectrum of practices which injure consumers."). The CPPA provides that "[a] consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District." D.C. Code § 28-3905(k)(1)(A). The CPPA enumerates a number of "unfair or deceptive" trade practices. *See generally* D.C. Code § 28-3904(a). However, an "unfair or deceptive" trade practice under the CPPA is not limited to

14

what is listed in the statute. *See Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003) ("Trade practices that violate other laws, including the common law, also fall within the purview of the CPPA."); *see also Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1007 (D.C. 2020) ("[T]he [CPPA] does not create any limitation in defining medical services as a 'trade practice.'").

A.  **The CPPA Applies to Landlord-Tenant Relations**

The defendants' contention that the CPPA does not apply to landlord-tenant relations, *see* Defs.' Mot. for Summ. J. at 6-7, merits little discussion. In 2018, the CPPA was amended to clarify that D.C. Code § 28-3905(k), the provision governing actions brought by consumers seeking relief from unfair trade practices, applies to landlord-tenant relations. *See* D.C. Code § 28-3905(k)(6) ("The right of action established by this subsection shall apply to trade practices arising from landlord-tenant relations."); *see also* At-Risk Tenant Protection Clarifying Amendment Act of 2018, 2017 D.C.B. 170, 65 D.C.R. 12363 ("To amend Chapter 39 of Title 28 of the District of Columbia Official Code to provide that the right of action established by section 28-3905(k) applies to trade practices arising from landlord-tenant relations."). The defendants' argument that the CPPA does not apply in the context of landlord-tenant relationships relies on caselaw decided between 2005 and 2016, before the applicable section of the CPPA was amended. *See* Defs.' Mot. for Summ. J. at 6-7. The plaintiff, therefore, may assert claims under the CPPA for the defendants' actions as a landlord providing housing to tenants.

B.  **There Is No Genuine Dispute of Material Fact That the Defendants Violated the CPPA by Violating the DCHRA in the Context of a Consumer Transaction**

In her motion for summary judgment, the plaintiff asserts that the defendants' discriminatory statements, which the plaintiff alleges violate D.C. Code § 2-1402.21(a)(5) in the consumer context, constitute a *per se* violation of the CPPA. *See* Pl.'s Mot. for Summ. J. at 13-15.

15

The defendants argue that the plaintiff's claim for a *per se* violation of the CPPA may not properly be considered by the Court, asserting that "this allegation appears *nowhere* within Count III of Plaintiff's Complaint" and therefore contravenes D.C. Super. Ct. Civ. R. 8(a), which requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Defs.' Opp'n at 5-8 (emphasis in original).

The defendants are correct that "[t]o pass muster, a complaint must be specific enough to 'give the defendant fair notice of what the claim is . . . and the grounds upon which it rests,'" *Tingling-Clemmons v. District of Columbia*, 133 A.3d 241, 246 (D.C. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and "'plaintiff[s] may not, through summary judgment briefs, raise new claims" where such claims were "not raise[d] [] in [the] complaint" and plaintiffs have "not file[d] an amended complaint," *Quinn v. Dist. of Columbia*, 740 F. Supp. 2d 112, 130 (D.D.C. 2010) (quoting *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 97n.3 (D.D.C. 2007) (declining to consider new claims and factual allegations premised on "additional violations of the ADA not mentioned in the complaint")). The Court, however, finds that the allegations in the complaint gave the defendants fair notice of the plaintiff's claim for a *per se* violation of the CPPA. In Count III, the complaint states, in pertinent part, "[t]he facts, as described above and set forth in this count, demonstrate that Defendants have violated D.C. Code § 28-3904, which makes it an 'unlawful trade practice' to . . . violate other laws, such as the D.C. Human Rights Act." Compl. ¶ 58. This paragraph includes a pinpoint citation to *Bassin*, a case in which the Court of Appeals found that "[t]rade practices that violate other laws, including the common law, also fall within the purview of the CPPA." 828 A.2d at 723.  The Court therefore rejects the defendants' assertion that the plaintiff's claim for a *per se* violation of the CPPA "appears *nowhere* within Count III of Plaintiff's Complaint," and will consider this claim on its merits.

16

"[A] consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District." D.C. Code § 28-3905(k)(1)(A). A consumer under the CPPA is "a person who . . . does or would purchase, lease (as lessee), or receive consumer goods or services, including as a co-obliger or surety, or does or would otherwise provide the economic demand for a trade practice," D.C. Code § 28-3901(a)(2)(A), and "goods and services" includes "real estate transactions," § 28-3901(a)(7). A "merchant" under the CPPA is "a person, whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer . . . consumer goods or services, or a person who in the ordinary course of business does or would supply the goods or services which are or would be the subject matter of a trade practice." D.C. Code § 28-3901(a)(3).

District of Columbia courts have consistently held that the violation of a District of Columbia statute, including the DCHRA, in a consumer context constitutes a violation of the CPPA. *See, e.g.*, *Bassin*, 828 A.2d at 723 (finding that plaintiffs could predicate their CPPA action on the defendant's violation of the common law); *Evolve*, 2020 D.C. Super. LEXIS 6, at *13-14 (finding the defendant liable for a breach of the CPPA where the defendant had violated the DCHRA in the context of a consumer transaction when refusing to accept housing vouchers from prospective tenants); *see also Atwater*, 566 A.2d at 466 (finding that administrative law judge had jurisdiction over claims brought under the Compulsory No-Fault Motor Vehicle Insurance statute, D.C. Code § 35-2101 *et seq.*, as "[t]he [CPPA] obviously contemplates that procedures and sanctions provided by the Act will be used to enforce trade practices made unlawful by other statutes").

Here, the Court finds that there is no genuine dispute of fact that the plaintiff is a "consumer" within the meaning of the CPPA, as it is undisputed that she sought to lease "goods

and services"—namely, an apartment at Latrobe—from the defendants. *See* Martin Dep. 63:13-64:22; *see also* D.C. Code §§ 28-3901(a)(2)(A), (a)(7). Moreover, it is undisputed that the defendants, who lease apartments to tenants in the District of Columbia "in the ordinary course of business," are "merchants" under the CPPA. D.C. Code § 28-3901(a)(3); *see, e.g.*, Cohenour Dep. 30:15-31:2, 39:6-11. There is no genuine dispute of material fact, therefore, that the defendants violated D.C. Code § 2-1402.21(a)(5) by making discriminatory statements based on source of income in a consumer context. As violating another District of Columbia statute in a consumer context constitutes a *per se* violation of the CPPA, the Court grants summary judgment for the plaintiff on her claim under D.C. Code § 28-3905(k)(1)(A). *See Evolve*, 2020 D.C. Super. LEXIS 6, at *13-14.

## CONCLUSION

Accordingly, it is this 26th day of May, 2021, hereby

**ORDERED** that the plaintiff's motion for partial summary judgment is **GRANTED**; and it is further

**ORDERED** that the defendants' motion for partial summary judgment is **DENIED**; and it is further

**ORDERED** that summary judgment is entered for the plaintiff as to liability on Counts I and III of the complaint.

**SO ORDERED**.

_____
Judge Jason Park
Superior Court of the District of Columbia

Copies to counsel of record via CaseFileXpress.